UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JAMES A. BLANTON,                           )
                                            )
            Petitioner,                     )
                                            )
      vs.                                   )          No. 4:05CV0936 AGF
                                            )
JILL MCGUIRE,                               )
                                            )
            Respondent.                     )

## MEMORANDUM AND ORDER

This matter is before the Court[1] on the petition of Missouri state prisoner James

Blanton for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner pleaded guilty

to two counts of selling more than five grams of marijuana, and was sentenced to two

concurrent terms of ten years imprisonment. In the present action, deemed filed on June 7,

2005,[2] Petitioner asserts that his constitutional rights were violated by the denial of his right

to appeal the denial of his post-conviction motion due to (1) post-conviction counsel

provided ineffective assistance in failing to insure that Petitioner's pro se motion for post-

conviction relief was signed, thereby resulting in the dismissal of his appeal of the denial of

---

[1]    The parties have consented to the exercise of authority by the undersigned
United States Magistrate Judge under 28 U.S.C. § 636(c).

[2]    This is the date on which Petitioner signed his petition, and accordingly the
date it is deemed filed. See Smith v. Roper, No. 4:03CV907 HEA(TIA), 2005 WL
2674942, at *2 n.1 (E.D. Mo. 2005) (absent evidence to the contrary, the date upon
which a habeas petitioner signed the petition is sufficient indicia of the date upon which
the petitioner delivered it to prison authorities for mailing; which date, under the prison
mailbox rule, becomes the date of filing).

post-conviction relief in violation of his constitutional right to such an appeal; (2) the state appellate court erred in not affording Petitioner the opportunity to correct the omission of his signature, as provided for by state law, again denying him the right to have appellate review of the denial of post-conviction relief; (3) his plea counsel was ineffective in misadvising him that if he pleaded guilty he had a good chance of receiving a sentence of 120 days incarceration; (4) the motion court erred in finding that there was a factual basis for the plea, when, in actuality, the facts did not support the plea and Petitioner was unfairly induced to admit to facts by the plea court's leading questions; and (5) plea counsel was ineffective in not securing a true plea agreement rather than permitting Petitioner to enter into an open plea.

Respondent argues that the habeas petition is barred by the one year statute of limitation of § 2254(d)(1), which was not tolled under § 2244(d)(1) by the submission of the unsigned pro se post-conviction motion, and that equitable tolling is not warranted. For the reasons set forth below, this Court will deny Petitioner's habeas petition as untimely, as well as without merit.

## BACKGROUND

### Charge, Guilty Plea, and Sentencing

On June 28, 2002, Petitioner was charged with two counts of selling more than five grams of marijuana, a Class B felony under Missouri law, to Lori Neimeyer, a confidential informant. On October 23, 2002, Petitioner, represented by private counsel, pleaded guilty in the Circuit Court of Linn County, Missouri, to both counts. At the plea hearing,

Petitioner stated that he understood that the plea was an "open plea" and was not based upon an agreement with the State. Petitioner acknowledged that he understood that each count carried a possible sentence of 15 years imprisonment, so that his potential sentence ranged from probation to 30 years. Petitioner testified that his attorney told him what sentences counsel and the prosecutor were going to recommend; he further testified that he knew that neither recommendation was binding upon the court. The court[3] ascertained that Petitioner knowingly waived his right to a trial by jury or by the court, as well as to all attendant rights. (Resp't Ex. A at 46-54.)

The court then questioned Petitioner about the facts underlying his crimes. Petitioner acknowledged that on two occasions he sold Neimeyer more than five grams of marijuana in exchange for $40.00 per sale.[4] The prosecutor stated that one sale involved 6.20 grams of marijuana and the other sale, 5.27 grams, and Petitioner stated that he did not dispute those amounts. Petitioner testified that he had had ample time to talk to his attorney about the case, that counsel did everything he had asked him to do and nothing he had asked him not to do, and that Petitioner had no complaints whatsoever about counsel's performance. The court accepted Petitioner's plea, finding that it was knowing and voluntary and that there was a factual basis to support it. The court also found no probable cause to believe that Petitioner had received ineffective assistance of counsel. Id. at 55-61.

---

[3]    The Honorable Gary Ravens, presiding.

[4]    Neimeyer was a cooperating witness, and both of these transactions were monitored and tape-recorded.

Petitioner's sentencing hearing was held on December 9, 2002. Petitioner testified at the hearing that he was 65 years old, on disability since approximately 1987, and had used marijuana "casually" for the past several years to alleviate his back, leg, and hip pain and to help him get some sleep. He stated that he did not customarily sell drugs and that the two sales with which he had been charged involved selling just a little over five grams each time to Neimeyer, whom he thought of as a friend. She asked him if he could get her some marijuana, and he said yes. Petitioner stated that each of these sales were for $40.00, the cost of the drugs to Petitioner. Id. at 63-67.

Petitioner testified that since 1995 or 1996, he had been the sole support of his two sons, ages 13 and 12, who lived with him. Petitioner stated that they were both doing well in school; exhibits offered into evidence showed that they were both on the honor roll. Petitioner further testified that his sons participated in extracurricular activities which he regularly attended, and that if he went to prison, he hoped his third and older son would take care of these boys "until something could be done." Id. at 68-71. Petitioner stated that he understood that the court would not consider probation if it believed that he would continue using illegal substances, and that with this in mind, he had gotten stronger pain medication from his doctor. He also testified that he had kept his marijuana out of the reach and knowledge of his sons, and he promised that he would not use illegal drugs again if he were given probation. Id. at 72-75.

Upon questioning by the prosecutor, Petitioner admitted that the two sales in question took place at his house while his sons were home. He added, however, that they were in a

different room, and that he had never smoked in front of them. He stated that several years ago, he had been sentenced to probation for possession of marijuana, and had twice violated his probation, once by buying some liquor. Id. at 76-78. Three of Petitioner's neighbors testified on his behalf that he was a good neighbor and a good father to his two younger sons. Id. at 78-85. Petitioner's oldest son testified that he was married and had three children, that his father was a good father to his younger brothers, whom he would be willing to take care of if his father was sent to prison. He testified that when he was growing up, he never saw Petitioner use marijuana, but that in recent years, he did see him use it occasionally for his pain. Id. at 86-88.

The prosecutor recommended a sentence of 12 years imprisonment, stating that Petitioner "need[ed] to be dealt with harshly." Petitioner admitted to the court that the last time he had used marijuana was about a month and a half ago. The sentencing judge noted that that was after the present case had been filed, that he did not think Petitioner had changed at all, and that he (the judge) did not like people who sold marijuana, and especially people who did so in the same home where there were children. The court sentenced Petitioner to two concurrent ten-year terms of imprisonment. Id. at 89-94.

**State Post-Conviction Proceedings**

On March 11, 2003, Petitioner filed a pro se motion for post-conviction relief under Missouri Supreme Court Rule 24.035, claiming ineffective assistance of counsel, and the lack of a sufficient factual basis to support the guilty pleas. Specifically, Petitioner asserted that counsel misled him into pleading guilty by advising him that the state had compelling

evidence, when in fact the depositions of Neimeyer and the Drug Enforcement Administration ("DEA") agent involved with the case did not provide compelling evidence that there had been "a complete sale transaction," and that had Petitioner known this at the time of his plea, he would have elected to go to trial. Petitioner also made the general assertion that counsel did not adequately investigate and prepare the case. As to his second claim, Petitioner asserted that the transcript of the plea hearing did not disclose that Petitioner was made aware of the elements of the offenses. He also contended that the prosecutor had failed to disclose exculpatory evidence at the plea hearing "relating to incomplete sales transaction and that [Petitioner] had not assented to the sale of drugs to informant." Id. at 14-24.

This pro se motion was not signed by Petitioner, although Petitioner did sign the accompanying Forma Pauperis Affidavit. Id. at 19. On March 17, 2003, counsel was appointed to represent Petitioner. On December 3, 2003, appointed counsel filed a document entitled "Counsel's Statement and Waiver in Lieu of Amended Motion," under Missouri Supreme Court Rule 24.035(e), which requires an appointed attorney to file an amended post-conviction motion if the pro se motion "does not assert significant facts or include all claims known to movant." Counsel stated that she would not be filing an amended motion, as her review of the record indicated that no additional claims "known to counsel, or facts in support thereof" had been omitted from the pro se motion. Id. at 25-26.

A hearing was held on April 13, 2004, at which Petitioner and his plea counsel testified. Petitioner, represented by post-conviction counsel, acknowledged that his plea

counsel had engaged in discovery, had discussed with him the state's evidence against him, and had provided him with copies of the depositions of Neimeyer and the DEA agent involved in the case. Petitioner further testified that he and counsel had listened to the tapes and reviewed two transcripts of the tapes, one that had been prepared using "ear phones."[5] Petitioner testified that in pleading guilty, he relied totally on plea counsel's assessment that there was no way they could "beat" the state's evidence at a trial. Petitioner stated that after Petitioner was sentenced, counsel told him that this was the first time he had tried a drug case. Petitioner testified that had counsel not told him that he had no chance of acquittal at trial, he would not have pleaded guilty. (Resp't Ex. B at 4-10, 15.)

Petitioner testified that when he entered his guilty pleas, he was satisfied with counsel's performance, as Petitioner had told the court at the time, but that while he was in jail, he learned some law and realized that counsel did not do a proper job. Petitioner contended that as the voices on the tape were not clear, it would not have been admissible, and that as Neimeyer had not signed "the bags of weed," she would not have been able to identify them in court. Petitioner admitted that he had been present during the deposition of Neimeyer and the DEA agent. The motion court accepted copies of the two depositions and stated that if the prosecutor could locate the tapes, the court would admit those into evidence, too. Id. at 10-23. Petitioner's plea counsel testified briefly, confirming that Petitioner was present at the two depositions and that he and Petitioner had discussed them.

---

[5]    Apparently based on discrepancies in the transcripts, new transcripts were prepared using headphones.

Id. at 25.

On May 3, 2004, the motion court denied Petitioner's motion on the merits. The court stated that the fact that Petitioner had listened to both audio tapes of the sales, had read both transcriptions of those tapes, had been present at the two depositions, and had read the transcriptions thereof, belied his contention that the evidence of a complete sales transaction was not known to him at the time he pleaded guilty. The court rejected Petitioner's claim that there was an insufficient factual basis for his plea, based upon the court's review of the section of the transcript of the plea hearing wherein Petitioner acknowledged that he had sold Neimeyer over five grams of marijuana on the two charged occasions for $40.00 each time. (Resp't Ex. A at 27-33.)

On appeal for the denial of post-conviction relief, Petitioner argued (with the assistance of appointed appellate counsel) that his rights under Rule 24.035(e) and his constitutional rights had been violated by appointed post-conviction counsel's failure to comply with the Rule and thereby, abandoning Petitioner. The asserted noncompliance was counsel's statement that no claims "known to counsel" had been omitted from the pro se motion, rather than that no claims "known to movant" had been omitted, as required by the Rule. Petitioner argued that the motion court clearly erred in denying Petitioner's pro se motion without first determining whether he had been abandoned, and he sought a remand for such a determination. (Resp't Ex. C.)

In its appellate brief filed on January 19, 2005, the State raised for the first time the fact that Petitioner had not signed his pro se motion for post-conviction relief. The State

argued that an unsigned motion for post-conviction relief was a nullity and did not invoke the jurisdiction of the motion court, and that even though the issue had not been raised before, the appellate court also lacked jurisdiction. The State argued, alternatively, that Petitioner's claims on appeal lacked merit. (Resp't Ex. D at 9-17.)

In reply, Petitioner asserted that had post-conviction counsel sufficiently reviewed his pro se motion, as required under Rule 24.035(a), she would have realized that Petitioner's mandatory signature was missing and taken action to cure the defect. Petitioner argued that this was further reason that the motion court should have held a hearing to inquire as to whether appointed counsel had abandoned Petitioner. (Resp't Ex. E.)

On April 12, 2005, the Missouri Court of Appeals dismissed Petitioner's appeal from the denial of post-conviction relief, for lack of jurisdiction. The appellate court held that Petitioner's unsigned Rule 24.035 motion did not invoke the motion court's jurisdiction. The appellate court quoted as follows from <u>Tooley v. State</u>, 20 S.W.3d 519, 520 (Mo. 2000) (en banc):

> The signature requirement [on a Rule 24.035 motion] is not a hollow, meaningless technicality. It constitutes a certificate that the filing is not for any improper purpose and is well grounded in fact and primarily has the objective of the elimination from the court system of groundless actions. Requiring a signature also makes certain the party actually assents to the filing of the action on his or her behalf.[6]

The Missouri Court of Appeals then noted that although Missouri Supreme Court

---

[6]    <u>Tooley</u> was overruled in part by the Missouri Supreme Court in <u>Glover v. State</u>, 225 S.W.3d 425 (Mo. 2007) (en banc). The affect of this on Respondent's statute of limitations argument will be discussed above.

Rule 55.03(a) gives a movant an opportunity to correct the missing signature, the record established that Petitioner "knew as early as January 20, 2005, [i.e., the day after the State had filed its appellate brief] that he had not signed the motion," yet "never 'promptly' sought to correct the deficiency." Thus, Petitioner's failure to sign the motion "rendered it a nullity." The appellate court held that because the motion court did not have jurisdiction when it ruled on Petitioner's motion, the appellate court did not have jurisdiction to consider the appeal. The court noted that the missing signature was due to Petitioner's negligence or failure to act -- not his attorney's. (Resp't Ex. F.) As noted above, the present habeas action was filed on June 7, 2005.

## DISCUSSION

### Statute of Limitations

Respondent argues that the habeas petition is barred by the one-year statute of limitations, which was not tolled under § 2244(d)(1) by the submission of the unsigned pro se post-conviction motion, and that equitable tolling is not warranted. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides for a one-year statute of limitations for the filing of a federal habeas petition by a state prisoner, with the limitations period beginning on the latest of four dates, including the date relevant here: the date on which the state conviction which the petitioner challenges "became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. §

2244(d)(1)(A).[7]  Under Missouri Supreme Court Rule 30.01(d), Petitioner had ten days from

sentencing to file a direct appeal.  Petitioner did not file such an appeal.  Thus, the one-year

statute of limitations for filing a federal habeas claim began to run on December 19, 2002,

ten days after he was sentenced.  See Smith, 2005 WL 2674942, at *2.  Absent tolling, the

one year ended on December 19, 2003.

AEDPA contains the following tolling provision:  "The time during which a properly

filed application for State post-conviction or other collateral review with respect to the

pertinent judgment or claim is pending shall not be counted toward any period of limitation

under this subsection."  28 U.S.C. § 2244(d)(2).  The issue before the Court then is whether

Petitioner's state post-conviction motion, which the Missouri Court of Appeals considered a

"nullity," was nonetheless "properly filed" for purposes of AEDPA.

In Artuz v. Bennett, 531 U.S. 4 (2000), the Supreme Court held that a "properly

filed" motion for AEDPA tolling purposes is one that complies with the applicable

---

[7]   The other three possible accrual dates are:

(B) the date on which the impediment to filing an application created by
State action in violation of the Constitution or laws of the United States is
removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially
recognized by the Supreme Court, if the right has been newly recognized by
the Supreme Court and made retroactively applicable to cases on collateral
review; or

(D) the date on which the factual predicate of the claim or claims presented
could have been discovered through the exercise of due diligence.

"conditions to filing," such as prescriptions regarding form, timeliness, the appropriate court and office in which the motion must be lodged, and filing fees. 531 U.S. at 8. Thereafter, in Pace v. DiGuglielmo, 544 U.S. 408 (2005), the Supreme Court held that a habeas petitioner's state post-conviction motion which was rejected by the state court as untimely under the state statute of limitations was not "properly filed," within the meaning of AEDPA's statutory tolling provision, stating: "When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)." 544 U.S. at 414 (citation omitted).

In Walker v. Norris, 436 F.3d 1026, 1030-32 (8th Cir. 2006), the Eighth Circuit applied Artuz and Pace to a situation similar to the one in the present case. In Walker, an Arkansas inmate filed a post-conviction motion within the 60-days permitted for the filing of such a motion. The inmate's and his trial counsel's signatures appeared on the signature line but were not verified by having them notarized, as required by Arkansas law. Several months later, appointed post-conviction counsel filed an amended motion. The trial court dismissed the motion with prejudice, concluding that the court lacked jurisdiction because the movant had not filed a verified petition within the 60-day deadline. The Arkansas Supreme Court affirmed, reasoning that the verification requirement was of substantive importance to prevent perjury and that the deadline requirement was jurisdictional in nature. The Eighth Circuit held as follows:

> Because the Arkansas Supreme Court affirmed and found Walker's inmate's petition invalid, "that is the end of the matter." See Pace, 125 S. Ct. at 1811.
>
> We hold Walker did not properly file his Rule 37 [post-conviction] petition

within the meaning of section 2244(d)(2), and accordingly, Walker's Rule 37 petition did not toll the AEDPA's one-year statute of limitations. Walker's state court judgment became final on December 8, 1999, and Walker had until December 8, 2000, to file an application for federal habeas corpus relief. Walker filed his application on April 10, 2003, more than 850 days late. The district court correctly found that Walker's [habeas] application was time barred under section 2244(d)(1).

436 F.3d at 1032.

After Walker was decided, the United States Supreme Court decided Allen v. Siebert, 128 S. Ct. 2 (2007), holding that a state prisoner's state postconviction relief petition, which was rejected by state court as untimely under the state statute of limitations, was not "properly filed" so as to trigger AEDPA's tolling provision, regardless of the fact that the state time limit operated as an affirmative defense and thus was nonjurisdictional. The Supreme Court held that Pace controlled the matter, as the state limitations period was a filing condition that was not met, whether jurisdictional or not, and that thus the habeas petitioner was not entitled to tolling of AEDPA's one year statute of limitations. 128 S. Ct. at 4-5.

Thereafter, in Runyan v. Burt, 521 F.3d 942 (2008), the Eighth Circuit applied an even more stringent rule than that applied in Walker. In Runyan, the Court held that an Iowa inmate's state post-conviction relief application, which failed to comply with Iowa law in that it did not include a filing fee or proper verification, was not "properly filed," as required to toll AEDPA's one-year limitations period, notwithstanding that no state court determined that the application was untimely, and notwithstanding that the Iowa courts proceeded to deny the application on the merits. Rather, the application was found by the

Eighth Circuit to have been "properly filed" only when it was date-stamped after the inmate corrected those errors. <u>Runyan</u>, 521 at 944-45 & n.3.

Here, the Court concludes that under <u>Allen</u>, <u>Walker</u>, and <u>Runyon</u>, Petitioner's post-conviction motion was not "properly filed" and, therefore, did not toll the statue of limitations under § 2244(d)(2). In <u>Tooley</u>, 20 S.W.3d at 519, the Missouri Supreme Court did state, as quoted by the Missouri Court of Appeals, that the signing requirement was jurisdictional and that the movant's failure to sign his pro se motion for post-conviction relief rendered it a nullity. But the state Supreme Court held that remand was required to give the movant the opportunity to correct the deficiency, where his cause was dismissed prior to the expiration of the 90-day period within which a pro se motion could be filed. In <u>Glover</u>, the Missouri Supreme Court held that for purposes of prisoner post-conviction motions, "the signature requirement is not jurisdictional and is subject to the sanctions of [Missouri Supreme Court] Rule 55.03." To the extent [it] contains language or hold[s] to the contrary, <u>Tooley</u> . . . and similar case are overruled." <u>See</u> <u>Glover</u>, 225 S.W.3d at 428. Rule 55.03(a) provides that an unsigned filing "shall be stricken unless the omission is corrected promptly after being called to the attention of the attorney or party who filed same."

The <u>Glover</u> Court added the following note: "If the unsigned motion is first noted on appeal, the movant can file a properly signed motion in the trial court with notice to the appellate court as was done in this case [after the state raised the issue on appeal in the post-conviction proceedings]. To the extent <u>Denny v. State</u>, 179 S.W.3d 381, 383 (Mo. App.

2005), requires a different procedure, it is overruled." <u>Glover</u>, 225 S.W.3d at 428 n.3.

<u>Denny</u> had held that a party whose unsigned motion for post-conviction failed to confer jurisdiction on the motion court was allowed the opportunity to correct the defect and sign the motion in order to confer jurisdiction, regardless of how much time elapsed before the deficiency was called to his attention. <u>Denny</u>, 179 F.3d at 383.

Here, Petitioner did not correct the omission of his signature, as had the petitioner in <u>Glover</u>, after the state raised the issue on post-conviction appeal. Thus, even though the signature requirement was not jurisdictional, Petitioner's failure to comply with it after being on notice of his omission and of the possible consequences thereof, supported the decision of the Missouri Court of Appeals that the post-conviction motion was not properly filed. As such, the post-conviction motion did not trigger AEDPA's tolling provision.

In addition to AEDPA's statutory tolling provision, the one-year limitations period may be equitably tolled if a petitioner establishes "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." <u>Pace</u>, 544 U.S. at 418 & n.8 (setting forth standard, "assuming, without deciding" that equitable tolling applies to AEDPA's one-year limitations period); <u>see also</u> <u>Lawrence v. Florida</u>, 127 S. Ct. 1079, 1085 (2007). "Equitable tolling is an <u>exceedingly narrow</u> window of relief." <u>Runyan</u>, 521 F.3d at 945 (citation omitted). This case does not present circumstances which meet this standard. <u>See</u> <u>id.</u> at 945-46 (rejecting petitioner's argument that equitable tolling applied; "Runyan's pre-filing efforts dealt with the kinds of obstacles faced by many if not most habeas petitioners, and therefore Congress is presumed to have considered such

equities in enacting a one-year limitations period.") (citation omitted); <u>Walker</u>, 436 F.3d at 1032-33 (holding that attorney's lack of knowledge of verification requirement on state petition did not warrant equitable tolling); <u>see also</u> <u>Lawrence</u>, 127 S. Ct. at 1085 (holding that mistake of habeas petitioner's state-appointed post-conviction counsel in calculating the one-year limitations period is not sufficient to warrant equitable tolling).

In sum, the Court believes that Petitioner's habeas action was untimely filed. Nevertheless, the  Court will present an analysis of the merits of Petitioner's claims, as an alternate basis for denying habeas relief.

## Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus cannot be granted unless the state court's adjudication

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  "AEDPA effected a move toward greater deference in the § 2254 courts' review of state-court decisions."  <u>Brown v. Luebbers</u>, 371 F.3d 458, 460 (8th Cir. 2004) (en banc).

Here, the Missouri Court of Appeals did not review the merits of the claims now before this Court.  The Court will accordingly apply the above standard of review to the adjudication

of Petitioner's claims by the state motion court.

**Noncognizable Claims - Infirmities in Post-conviction Proceedings**

Petitioner argues that counsel's abandonment on post-conviction appeal and the state appellate court's refusal to remedy such abandonment resulted in a violation of his right to due process. "Section 2254 only authorizes federal courts to review the constitutionality of a state criminal conviction, not infirmities in a state post-conviction relief proceeding." Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir. 1990).

> Errors or defects in the state post-conviction proceeding do not, ipso facto, render a prisoner's detention unlawful or raise constitutional questions cognizable in habeas corpus proceedings. Habeas corpus in the federal courts does not serve as an additional appeal from state court convictions. Even where there may be some error in state post-conviction proceedings, this would not entitle appellant to federal habeas corpus relief since appellant's claim here represents an attack on a proceeding collateral to detention of appellant and not on the detention itself.

Williams v. Missouri, 640 F.2d 140, 143-44 (8th Cir. 1981).

Petitioner's instant claim that the Missouri appellate court denied him due process by frustrating his attempt to comply with Rule 29.15 does not challenge his conviction or sentence, but rather challenges the method and process by which his state collateral relief was handled. Such a claim is not cognizable in this § 2254 proceeding. See Williams-Bey, 894 F.2d at 317 (holding that claim that state post-conviction court erred in failing to make findings concerning his allegation that the prosecution withheld discovery was not cognizable in § 2254 proceeding); Jordan v. Bowersox, No. 4:04-CV-409 CAS, 2008 WL 441697, at *2 (E.D. Mo. 2008) ("[P]etitioner's self-described "systematic critique of Missouri

post-conviction relief" process and "full-bore defense against the use of Missouri PCR to bar federal constitutional grievances," cannot be the basis for relief in a federal habeas proceeding."); White v. Kemna, No. 4:03 CV 415 FRB, 2006 WL 2802203, at *3 (E.D. Mo. Sept. 25, 2006) (holding that habeas petitioner's claim that appellate post-conviction counsel's failure to include all of petitioner's claim in an amended post conviction motion, and the Missouri appellate court's refusal to consider the claims that were not included in the amended motion resulted in a violation of due process, was not cognizable under § 2254).

**Factual Basis for Guilty Plea and Questioning by the Plea Court**

Petitioner's claim challenging the factual basis for his plea and the plea court's questioning at the plea hearing is essentially a claim that his plea was not voluntary. Indeed, a guilty plea that is not knowing and voluntary violates due process. North Carolina v. Alford, 400 U.S. 25, 31 (1970); Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999). Both aspects of Plaintiff's claim, however, are belied by the plea and sentencing hearing transcripts. As noted above, at the plea hearing Petitioner acknowledged that on two occasions he sold Neimeyer more than five grams of marijuana in exchange for $40.00 per sale. This together with the state's evidence provided more than a sufficient factual basis for the guilty plea. See Wilcox v. Hopkins, 249 F.3d 720, 724 (8th Cir. 2001) (affirming denial of federal habeas relief to petitioner who claimed there was no factual basis for his plea, where petitioner's guilty plea to attempted second-degree murder in connection with his shooting at police officers was voluntary, although petitioner told the state plea court that the officers fired first, he did not know they were police, and he was drunk at the time); Cranford v. Lockhart, 975 F.2d 1347,

1349 (8th Cir. 1987) (per curiam) (rejecting habeas petitioner's claim that there was no factual basis for his guilty plea claim where record before the state trial court, including the prosecutor's file, contained strong evidence of petitioner's guilt).

Furthermore, upon review of the plea hearing transcript, this Court discerns no improper or leading questioning by the plea court to induce Petitioner to plead guilty. To the contrary, the trial court openly asked Petitioner to tell the court what he did. The trial court's decision to accept Petitioner's plea as knowing and voluntary is thus fully supported by the record, and the motion court's adjudication of Petitioner's claim on this matter was neither contrary to clearly established federal law nor an unreasonable determination of the facts. Thus habeas relief on this claim is not warranted.

**Ineffective Assistance of Plea Counsel**

Petitioner argues that his plea counsel was ineffective in misadvising him that if he pleaded guilty, he had a good chance of receiving a sentence of 120 days incarceration, and in not securing a plea agreement with the state for such a sentence.

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must not only show that counsel's performance was deficient, but that he was prejudiced by his counsel's incompetence. Strickland v. Washington, 466 U.S. 668, 694 (1984). In order to show prejudice, a habeas petitioner who pled guilty in state court must show that "there is a reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985) (applying Strickland to the guilty plea context).

Here, as noted above, Petitioner testified at the plea hearing that he understood that his plea was not based upon an agreement with the State; that he understood that each count carried a possible sentence of 15 years imprisonment, so that his potential sentence ranged from probation to 30 years; that his attorney told him what sentences counsel and the prosecutor were going to recommend and he knew that neither recommendation was binding upon the court; and that he had had ample time to talk to his attorney about the case, that counsel did everything he had asked him to do and nothing he had asked him not to do, and that Petitioner had no complaints about counsel's performance.  This testimony defeats his ineffective assistance of counsel claims.  <u>See</u> <u>Wilcox</u>, 249 F.3d at 724-75; (rejecting claim of ineffective assistance based upon counsel's alleged misinformation as to likely sentencing consequences of pleading guilty where the state court advised petitioner of applicable minimum and maximum sentence); <u>Dunn v. Wyrick</u>, 679 F.2d 731, 732-33 (8th Cir. 1982) (rejecting habeas petitioner's claim that plea counsel was ineffective for, among other things, failing to conduct any pretrial investigation and misleading petitioner into believing he would receive a certain sentence, in light of petitioner's testimony at plea hearing that he was satisfied with counsel's performance); <u>Boyd v. Yukins</u>, No. 03-1404, 2004 WL 1193952, at *4 (6th Cir. May 27, 2004) (holding that even assuming that counsel gave habeas petitioner incorrect information regarding sentencing consequences of a guilty plea, the state trial court remedied any misconception by informing petitioner of the potential maximum and minimum terms of imprisonment).

## CONCLUSION

The Court concludes that Petitioner's claims are time-barred, and even if the petition were timely, none of Petitioner's claims entitle him to federal habeas relief. The Court does not believe that reasonable jurists might find the Court's resolution of the procedural or substantive issues in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. § 2253(c)(2). See Slack v. McDaniel, 529 U.S. 473, 484-85 (2000) (setting forth the standard for issuing a certificate of appealability); Langley v. Norris, 465 F.3d 861, 862-63 (8th Cir. 2006) (same).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of James Blanton for habeas corpus relief is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not issue in this case.

A separate Judgment shall accompany this Memorandum and Order.

AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of September, 2008.